IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF WISCONSIN

ROBERT BAKER,

    Plaintiff,

<u>COMPLAINT</u>

vs.     Case No. 2013CV01176

COUNTY OF MILWAUKEE,

    Defendants.

The above named plaintiff by Walter J. Lanier of Lanier Law Offices, complains of the above-named Defendant and alleges and respectfully shows to the Court as follows:

1. Plaintiff, Robert Baker is a black male, who is a resident of the City of Milwaukee, County of Milwaukee, State of Wisconsin.

2. Defendant, Milwaukee County, is an employer within the meaning of 701(b) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e(b) and relevant employment laws.

**JURISDICTION AND VENUE**

3. Plaintiff invokes this court's jurisdiction pursuant to 28 U.S.C. s 1331, 42 U.S.C. 2000e-5(f) (3). This action arises pursuant to 42 U.S.C. 2000e et seq., Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. 1983.

4. All conditions precedent to the filing of this action pursuant to Title VII have been satisfied in that the Plaintiff received a Right to Sue Notice from the Equal Employment Opportunity Commission of the United States on or about July 19, 2013. A true and correct copy of that Right to Sue Notice is attached hereto as **Exhibit A**.

5. Venue is proper in the Eastern District of Wisconsin because Plaintiff resides in Wisconsin, Defendant, County of Milwaukee is located in Wisconsin, upon information and belief, and the claims arose in Wisconsin.

## BACKGROUND

6. Plaintiff has worked in the elevator trade since 1980's. Baker is certified to construct, install, service, and repair elevators, including both passenger and freight elevators.

7. At all relevant times, the County has employed a number of "elevator constructors," also known as "elevator mechanics." The elevator mechanics are responsible for maintaining and repairing the elevators located inside Milwaukee County facilities.

8. Sometime in 1997, Plaintiff filed a race discrimination complaint against Defendant with the Equal Rights Division of the State of Wisconsin ("ERD"), alleging, among other things, that Defendant discriminated against him on the basis of race for its failure to hire him for an elevator mechanic position in 1996. (the "1997 ERD Claim").

9. On or about December 23, 1997, Plaintiff and Defendant reached a settlement resolving the 1997 ERD Claim (the "1997 Settlement").

10. Mary Ann Grimes, then an attorney for Milwaukee County Corporation Counsel, handled the negotiations for the defendant.

11. The 1997 Settlement provided, among other things, that defendant would hire plaintiff to fill the next available elevator position.

2

12. At sometime in 2005, defendant became aware that an elevator mechanic, Art Love had retired.

13. Baker's understanding was that under the 1997 Settlement, Baker was to be hired to fill the position made available by Love's retirement. Baker approached defendant to regarding being hired pursuant to the 1997 Settlement.

14. Sometime thereafter, defendant determined that Baker was to be hired pursuant the 1997 Settlement.

15. In or about April 2005, Jack Takerian, then Director of Facilities Management, who would interview Baker inquired of Mary Ann Grimes to determine why plaintiff was the only one on the list for the position.

16. Mr. Takerian was told that defendant was being hired as part of a settlement to resolve a racial discrimination complaint.

17. Beginning thereafter, defendant began a pattern of discrimination and retaliation against plaintiff based on race and in retaliation for defendant's filing of the 1997 ERD Claim including, for example, the failure to properly train defendant, training defendant differently than similarly situated white elevator mechanics, disparate treatment in disciplinary actions and termination for discriminatory and retaliatory reason.

18. After hearing from Ms. Grimes, Mr. Takerian subsequently interviewed defendant.

19. Although he was aware of the reason defendant was to be hired, he went back to Ms. Grimes and asked if he had to hire defendant.
20. On or about May 10, 2005, defendant hired the plaintiff.

21. Mr. Takerian, a white male, told him that he would be trained by another mechanic who worked for the defendant, Jeff Yourich, also a white male.

22. Defendant was personally acquainted with Mr. Yourich. He had problems working with Mr. Yourich due to Yourich's use of racially derogatory language in the workplace. On one occasion, when Yourich and Baker were working together to install an elevator, Yourich became angry with Baker and called him a "nigger," as well as other derogatory terms. On another occasion, Yourich called Baker's wife a "nigger lover."

23. On plaintiff's second day of work, Baker was assigned to work with Yourich. That day, Yourich made a number of hostile comments to Baker. Among other things, Yourich told Baker not to get "too comfortable" with his new job because he was going to "see to it" that Baker would soon be "gone." Yourich also indicated that he wanted Baker gone because of Baker's lawsuit against the County.

24. Mr. Yourich consistently treated and trained defendant differently than he treated and trained white co-workers including being unavailable, providing incomplete or inaccurate information, and repeatedly refusing to help Mr. Baker.

25. Defendant complained about Mr. Yourich to supervisor Richard Berndt. Mr. Berndt, a white male, failed to rectify the situation or to assist Mr. Baker to be properly trained.

26. In fact, almost immediately after Berndt found out that Baker had filed a discrimination complaint against the County, and that he had been hired pursuant to a settlement agreement resolving that complaint, Berndt began to treat Baker adversely.

27. Mr. Berndt's discriminatory and retaliatory treatment included a failure to address Baker's complaints about Yourich, failure to properly document incidents between Baker and Yourich, and failing inaccurate investigation reports relative to plaintiff's work.

28. On or about August 15, 2005, defendant terminated plaintiff.

29. The termination was, in part, based on reports by Mr. Berndt.

30. On or about January 2006, defendant hired a white male to fill the position held by defendant.

31. During his first few weeks of work, the white male was given substantial training by Mr. Yourich.

## CLAIM I
## VIOLATION OF CIVIL RIGHTS ACT OF 1964
## RACE DISCRIMINATION

32. Defendant's actions against plaintiff in this case including those taken or abstained from by Messr's Takerian, Berndt and Yourich were motivated by discrimination since Plaintiff is a black.

## CLAIM II
## VIOLATION OF CIVIL RIGHTS ACT OF 1964
## RACE DISCRIMINATION

33. Defendant's actions against plaintiff in this case including those taken or abstained from by Messr's Takerian, Berndt and Yourich were motivated by discrimination in retaliation for plaintiff's filing of the 1997 ERD Claim.

## CLAIM III

## VIOLATION OF 42 U.S.C. 1983 - RACE DISCRIMINATION

34. Plaintiff incorporates by reference paragraphs 1 - 31 hereof, all of which amount to racial discrimination in violation of 42 U.S.C. 1983.

## RELATED CASES/RES JUDICATA AND COLLATERAL ESTOPPEL

35. On or about October 17, 2005, plaintiff filed a complaint with the ERD alleging defendant discriminated and retaliated against plaintiff under the same facts and circumstances as the present complaint with this court (the "2005 ERD Claim").

36. On or about March 23, 2006, an ERD investigator concluded there was probable cause.

37. A three-day hearing was held before an Administrative Law Judge and concluded on July 8, 2008.

38. On December 31, 2011, the Administrative Law Judge issued a Decision and Memorandum Opinion concluding defendant discriminated against plaintiff on the basis of race and in retaliation for filing the 1997 ERD Claim. A true and correct copy of the Decision and Memorandum Opinion is attached hereto as **Exhibit B** (the ERD Decision).

39. The ERD Decision governs liability for the issues litigated therein pursuant to the principle of res judicata.

40. The findings of fact in the ERD Decision govern in the present case pursuant to the doctrine of collateral estoppel.

41. On or about August 23, 2013, plaintiff filed a complaint against defendant in Milwaukee County seeking to enforce the ERD Decision. A true and correct copy of the complaint is attached hereto as **Exhibit C**.

# JUDGMENT

WHEREFORE, Plaintiff prays this court will:

A. Issue a declaratory judgment declaring that the actions of defendant, as set forth in this Complaint, violated plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq. and related employment laws.

B. Enter judgment in favor of plaintiff and against defendant for back pay in the amount of those wages and fringe benefits that it is determined that plaintiff lost as a result of defendant's unlawful conduct, together with interest.

C. Enter judgment in favor of plaintiff directing defendant to rehire and restore plaintiff to full employment with the Defendant.

D. Enter judgment in favor of plaintiff and against defendant for punitive damages, compensatory damages, including but not limited to, damages for mental anguish and humiliation, together with interest.

E. Award plaintiff's reasonable attorney's fees together with the costs of this action.

F. Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of plaintiff's rights and to protect other Milwaukee County employees from such unlawful behavior.

## JURY DEMAND

Plaintiff demands a jury triable for all claims triable by a jury.

_____
Walter Lanier
State Bar No. 1028121

Lanier Law Offices
Attorneys for Plaintiff
3333 West Kilbourn Avenue
Phone (414) 690-2520/wjlanier@gmail.com